FITZHUGH *v.* GOFORTH.

5-1423                                    309 S. W. 2d 196

Opinion delivered January 27, 1958.

*Langston & Walker* and *Wayne Foster,* for appellant.

*Martin K. Fulk* and *Rodney Parham, Jr.,* for appellee.

J. SEABORN HOLT, Associate Justice. This suit was begun by appellants to enjoin appellees from obstructing the natural flow of water across certain property adjoining appellants' home, which property lies outside the City of Little Rock. Appellees answered with a general denial and in a cross-complaint alleged that the property in question was used as a public street and had been so dedicated. In their answer to this cross-complaint, appellants denied any dedication and asserted ownership of the property in themselves. Trial resulted in a decree resolving the issues in favor of appellees and this appeal followed.

For reversal appellants contend there had never been a dedication of the property in question and that any attempted dedication had been abandoned by the public.

The record reflects that on February 4, 1950, appellants acquired Lot 30, Block 3, in Westwood Addition, on which they built their present home. On March 20, 1950, Howard Osborne and wife, by warranty deed, conveyed to H. E. Luke and wife the property involved here,

described as the West 50 feet of Lot 29, Block 3, Westwood Addition "to be used for a hard surface road." As indicated, this 50 foot strip was adjacent to appellants' property immediately to the east. On August 22, 1950, Luke by warranty deed conveyed to T. M. Tatum and R. M. Allison, along with other property, this same 50 foot strip, the West 50 feet of Lot 29, Block 3, Westwood Addition with this provision: "the above described strip to be used as a street." On August 28, 1950, by warranty deed, Tatum conveyed to J. T. Cone his interest in other property together with this West 50 foot strip of Lot 29, Block 3, Westwood Addition, the deed containing this provision: "the above described strip to be used as a street." On September 7, 1950, Osborne conveyed to appellees (The Goforths) Lot 29, Block 3, Westwood Addition. On July 29, 1953, Cone conveyed to the Fitzhughs, by quitclaim deed, a strip 50 feet wide on the west side of Lot 29, Block 3, Westwood Addition, the property here involved. This deed contained no designation of a street. On August 3, 1953, Allison conveyed by quitclaim deed to the Fitzhughs, this same 50 foot strip, and this deed made no mention of a street.

From the above undisputed record and sequence of deeds, it appears that Howard Osborne was the first dedicator (on March 20, 1950) of the 50 foot strip in question by recorded warranty deed to Luke. When he attempted later to convey all of Lot 29, Block 3, in question, he had prior thereto, as indicated, already dedicated this West 50 foot strip of Block 29 as a street. The subsequent deeds of Luke to Tatum and Allison reaffirm this dedication, so at the time appellant secured a quitclaim deed from Cone on July 29, 1953, and quitclaim deed from Allison on August 3, 1953, conveying their interest, this strip in question had been previously dedicated by recorded warranty deed as a street.

In these circumstances the question presented is, was there a dedication of the street in question to the public's use and was such dedication accepted by the public. We hold that there was a dedication and an acceptance. We announced the applicable rule here in

*Hankins* v. *City of Pine Bluff,* 217 Ark. 226, 229 S. W. 2d 231, wherein we said: "The two essential elements of a dedication are the owner's appropriation of the property to the intended use and its acceptance by the public. No specific duration of the public user is required to complete the dedication, *Ayers* v. *State,* 59 Ark. 26, 26 S. W. 19."

After a careful review of all the testimony we hold that the findings of the chancellor, that there had been an acceptance of this dedicated street by the public (the user), were not against the preponderance of the evidence.

Appellee Goforth testified that he had used the street, and that the water department had used it in laying a water main in this street. Appellants say in their brief: "Now it is unquestionable that the dedicator, R. M. Allison, on his own initiative sent bulldozers upon· the strip and attempted to establish a right of way across the strip for the use of the general public." Witness Saunders testified: "Q. Are you telling the court the road was built? A. Well, the right of way was there and it was graded . . . Q. Was it ditched on each side? A. Bladed up on each side, yes, sir . . . Q. Mr. Saunders, did you consider after seeing that road that it was a public street? A. Yes, sir, very definitely. Q. Did you ever drive over it as a member of the public? A. Yes, sir. Q. You did drive an automobile over it? A. Yes, sir. Q. On how many occasions? A. On one occasion only. Q. Did you get through there all right? A. I did it for the purpose to see how it came through from the fire station. Q. How long was that after the road was built? A. Oh, several months after it was bladed up." Witness Emery testified that he, with Mr. W. R. Davis, a member of the Water Commission, walked over the road inspecting the water mains. Mrs. Horstman testified that she and her husband had walked up and down the street a number of times and she had seen cars go across it and they had received delivery of drain tile from trucks that used the road. Another witness, Walden, testified that he and others drove up the street on sev-

eral occasions. W. R. Davis, above, a member of the Water Commission, testified that the water company laid the water main along the right of way of this road. Other witnesses gave testimony of a corroborative nature as to the use of this street. Appellant Fitzhugh admitted that this street in question "was graded and crowned off in 1952," and further testified: "Q. Mr. Fitzhugh, according to the original design, which direction did your garage face? A. At one time I planned to face it to Ascension Road. Q. Why the change? A. Because I entered off of the fifty foot strip. Q. You were going to use the fifty foot strip? A. Yes. Q. In other words, if that was going to be a street, you had rather use that street entrance and not have to have a driveway on your yard? A. I had the driveway on the yard. I merely did it that way because I wanted it entered from that direction, yes. Q. And at that time you could only have entered from that direction if that was a street? A. No, I could enter my garage from my own property. My garage don't reach the property line on my property. Q. No, but it was most advantageous to enter from this street should it be one? A. That's right, yes, should it be one."

Mrs. Goforth testified: "When Mr. Osborne conveyed that property to us he conveyed all of Lot 29. Of course we knew by a previous instrument that 50 feet of Lot 29 had been set aside for a hard surfaced street. When we got our first tax statement it was on all of Lot 29 and I protested it at the time, having to pay taxes on the 50-foot strip which was to be a street, and we got a corrected tax statement taking that 50 feet off the property tax."

While there was evidence introduced which was in conflict with the above, however, as indicated, when all of the testimony is considered we hold that the preponderance thereof supports the court's findings and decree. Affirmed.